**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2769-17T3

UNITED SERVICES, INC.,

    Plaintiff-Appellant,

v.

CITY OF NEWARK,

    Defendant-Respondent.

_____

Argued September 10, 2019 – Decided October 9, 2019

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5010-16.

Gabriel Harold Halpern argued the cause for appellant (Pinilis Halpern LLP, attorneys; Gabriel Harold Halpern, on the briefs).

Gary Scott Lipshutz, Assistant Corporation Counsel, argued the cause for respondent (Kenyatta K. Stewart, Corporation Counsel, attorney; Gary Scott Lipshutz, on the brief).

PER CURIAM

The City of Newark solicited bids for janitorial, maintenance, and germicide services at numerous public buildings in March 2016. As noted in our prior opinion, plaintiff United Services, Inc., had been performing these services since 2008 pursuant to emergency contract extensions. United Servs., Inc. v. City of Newark, No. A-2117-16 (App. Div. Apr. 17, 2017) (slip op. at 2).[1] Newark received proposals from a number of vendors, including plaintiff, which submitted the lowest bid. Id. at 3. However, Newark rejected all bids, see N.J.S.A. 40A:11-13.2 (permitting the public entity to reject all bids under limited circumstances), and plaintiff filed suit. Id. at 4.

Thereafter, the city council passed a resolution authorizing Newark to utilize competitive contracting to procure the services rather than re-bid. See N.J.S.A. 40A:11-4.1 (permitting local contracting units to use competing contracting in lieu of public bidding for certain services). Ibid. The new request for proposals (RFP) made significant changes to the prior bid specifications. Id. at 4-5. In particular, the RFP divided the contract into eight smaller contracts,

---

[1] Although Rule 1:36-3 generally forbids citing an unpublished opinion, we do so here to provide a full understanding of the issues presented and pursuant to the exception in the rule permitting citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law." See Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

each one dealing with a limited group of municipal properties, and the RFP required the awardee commit to minimum staffing levels and hours.

Plaintiff sought and obtained temporary restraints of the competitive contracting process while the lawsuit challenging Newark's rejection of all bids was pending. Id. at 5. When the Law Division judge vacated those restraints, we granted plaintiff leave to appeal, reversed the Law Division's order, and "enjoin[ed] Newark from making any award of the contract" pending resolution of plaintiff's complaint. Id. at 6, 11.[2]

Apparently, discovery in the case proceeded at a snail's pace, although we do not ascribe fault for that to either party or the court. In any event, both plaintiff and Newark moved for summary judgment, and the judge heard oral argument on the cross-motions before issuing a comprehensive written opinion.

The judge stated the issue was whether there was "a genuine dispute as to [a] material fact . . . whether [Newark's] rejection of all bids" was arbitrary or capricious, i.e., motivated by improper reasons or rather "supported by proper and identifiable reasons." See, e.g., CFG Health Sys., LLC v. Cty. of Essex, 411 N.J. Super. 378, 386 (App. Div. 2010) ("If a public contracting agency

_____

[2] We rejected, however, plaintiff's request to enjoin Newark from proceeding to solicit proposals under the RFP. Id. at 11.

exercises its statutory authority to reject all bids, judicial review of that administrative decision is limited to determining whether it was 'arbitrary and capricious.'") (quoting Bodies by Lembo, Inc. v. Cty. of Middlesex, 286 N.J. Super. 298, 309 (App. Div. 1996)).  He concluded plaintiff failed to raise a material factual dispute impugning Newark's stated reasons for rejecting all bids and proceeding through competitive contracting, even though contracts awarded through the RFP process were likely to cost the city more money than the amount of plaintiff's bid.

The judge denied plaintiff's motion for summary judgment, granted Newark summary judgment, and entered two conforming orders.  This appeal followed.

Plaintiff urges us to reverse the grant of summary judgment to Newark.[3] It argues that there were genuine disputes of material facts as to the city's intent in rejecting all bids and adopting the competitive contracting process.  For example, plaintiff cites deposition testimony of Newark's mayor, in which he acknowledged a desire not to award contracts to the same companies already providing the services, but rather to "break up some of these contracts and allow

---

[3]  Plaintiff does not assert that the judge erroneously denied it summary judgment.

A-2769-17T3

local residents to have opportunities[.]" Plaintiff also points to the deposition testimony of Kevin Brown, vice-president of Service Employees International Union Local 32BJ (Local 32BJ), and others, demonstrating the union's role in formulating specifications included in the RFP that required negotiation of a "labor peace" agreement favorable to the union. Plaintiff alleges there was sufficient evidence demonstrating the union colluded with unsuccessful bidders to challenge any award of a contract to plaintiff.[4]

Newark, on the other hand, argues nothing in the record supports plaintiff's claim that its stated reasons for rejecting bids and proceeding through competitive contracting were pretextual. It notes, for example, that the original bid specifications contained only "suggested" hours and levels of staffing, rather than the RFP's specifications requiring awardees' commitments to minimum work hours and staffing levels. Newark notes there was nothing improper in its consultation with Local 32BJ prior to issuing the RFP specifications because the union was not a "potential vendor." See N.J.S.A. 40A:11-4.4(c) ("At no time during the proposal solicitation process shall the purchasing agent or counsel or administrator convey information, including price, to any potential vendor

---

[4] Plaintiff is non-unionized. The original bid specifications also included similar language regarding a labor peace agreement.

which could confer an unfair advantage upon that vendor over any other potential vendor."). Lastly, Newark argues that given the passage of time and for other equitable reasons, the appeal is moot.

Without addressing its merits, we agree the appeal as moot. "Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (citing Jackson v. Dep't of Corr., 335 N.J. Super. 227, 231 (App. Div. 2000)). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J Super. 214, 221–22 (App. Div. 2011)). However, courts may decide such cases where the issues "are of substantial importance and are capable of repetition while evading review" unless determined by courts. Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002) (citing Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998)).

We acknowledge the public bidding process raises issues of substantial public importance. Id. at 166–67. In Advance Electric, we considered the

merits of an otherwise moot appeal because the plaintiff/unsuccessful bidder presented a facial challenge to legislation, arguing, in part, that the failure to adopt regulations governing the qualifications of subcontractors forced school boards to solicit separate bids for each portion of the work. Id. at 164, 167–68. We concluded that the "issue plainly is capable of frequent recurrence until such time as either subcontractor qualification regulations are specifically adopted . . . or until the issues that [the plaintiff] now raises are judicially resolved." Id. at 167.

In Betancourt, we recognized the "public interest in decisions regarding the termination of life-sustaining medical treatments[,]" and that the case "involve[d] a situation that could evade judicial review." 415 N.J. Super. at 313–14. Nevertheless, we dismissed the appeal as moot based on the "unusual circumstances of [the] case [that] ma[d]e a recurrence of this specific set of facts unlikely." Id. at 315, 319.

Here, the bid solicitation in 2016 was for a two-year contract, meaning that had the court voided the rejection of all bids and awarded the contract to plaintiff as the lowest responsible bidder, the agreement would have terminated more than one year ago. Instead, as a result of our stay, plaintiff has continued to this day to perform as it was performing prior to the bid rejection, i.e., under

A-2769-17T3

emergency contract extensions. In addition, had it won the contract award in 2016, plaintiff would have had to perform the contract for approximately $1.8 million per year, i.e., the amount of its bid. Instead, plaintiff has been performing under successive no-bid emergency contracts of approximately $4.25 million per year.

Plaintiff contended at oral argument that the appeal is not moot because if successful, it should be awarded counsel fees and litigation costs. Plaintiff cites no authority for this exception to the American rule, and we are unaware of any authority for this proposition in our Local Public Contract Law jurisprudence.

Plaintiff seemingly implies that it has been performing the work at 2008 pricing levels, and, therefore, the appeal is not moot because it is entitled to recoup damages in the nature of monies it would have been paid had the contract been awarded under its 2016 bid. Of course, this ignores a well-recognized principle of our bidding jurisprudence specifically that "an aggrieved bidder is not entitled to damages [but] is limited to the remedy of injunctive relief[.]" Suburban Disposal, Inc. v. Twp. of Fairfield, 383 N.J. Super. 484, 495 (App. Div. 2006) (citing M.A. Stephen Constr. Co. v. Borough of Rumson, 125 N.J. Super. 67, 76 (App. Div. 1973)). And, as already noted, plaintiff is hard-pressed to argue that it suffered financial damages by performing the contract under

emergency extensions that provided payments more than twice the amount of plaintiff's 2016 bid.

In short, the original issue presented by plaintiff's appeal, i.e., whether in 2016 it should have been awarded a two-year contract to perform janitorial, maintenance, and germicide services at Newark's public buildings for approximately $1.8 million per year has been fully resolved without the need for our judgment. See Betancourt, 415 N.J. Super. at 311 ("A case is technically moot when the original issue presented has been resolved, at least concerning the parties who initiated the litigation.") (quoting DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)). Plaintiff has in fact performed the contract services for more than two years since it commenced its lawsuit in the Law Division and for more money than it would have received if it had received the contract pursuant to the 2016 bid. The appeal is moot.

The appeal is dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2769-17T3